IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**UNITED STATES OF AMERICA,**

        Plaintiff/Respondent,

  v.

**GARY LEE WALLS,**

        Defendant/Petitioner.

No. 6:13-cr-00433-MC

**OPINION AND ORDER**

_____

**MCSHANE, Judge:**

      Petitioner, Gary Lee Walls, is currently serving a 120-month sentence imposed pursuant to a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). On June 23, 2016, he filed a motion to vacate or correct his sentence pursuant to 28 U.S.C. § 2255, arguing that the Supreme Court's holding in *Johnson v. United States*, 135 S. Ct. 2551 (2015), which invalidated the residual clause of the Armed Career Criminals Act ("ACCA"), renders his sentence constitutionally deficient. The Government has since moved to dismiss his motion. Because Petitioner assented to the terms of his plea agreement under threat of an unconstitutional ACCA-enhanced sentence, and because the sentencing court erroneously assumed that Petitioner was eligible for such a sentence, his motion is GRANTED. The Government's motion is DENIED.

## BACKGROUND

      On August 27, 2014, Petitioner pleaded guilty to one count of possessing a firearm in violation of 18 U.S.C. § 922(g). Plea Agreement 1-2. As part of his plea agreement with the Government, Petitioner accepted a sentence of 120 months in prison, the statutory maximum sentence allowable for a conviction under § 922(g). 18 U.S.C. § 924(a)(2). In doing so,

Petitioner avoided the risk of a mandatory 15-year minimum sentence under the ACCA as an individual with "three previous convictions . . . for a violent felony or for a serious drug offense." 18 U.S.C. § 924(e)(1). Although the indictment against Petitioner listed a number of past felony convictions, he was not charged as an Armed Career Criminal. *See* Indictment 1-2. The 120-month sentence was nevertheless a significant upward departure from the 37 to 46 months recommended under the United States Sentencing Guidelines. Gov't Sentencing Mem. 3.

The record reflects that Petitioner's assent to this upward departure was premised on his belief, and the Government's representations, that he would otherwise be charged as an Armed Career Criminal. As stated in the plea agreement, Petitioner accepted the 120-month sentence at least in part to induce the Government's recommendation "that the Armed Career Criminal Sentencing Enhancement under 18 U.S.C. § 924(e)(1) should not be applied." Plea Agreement 2. The Government further expounded in its sentencing memorandum that the agreement would "afford[ ] Defendant a significant benefit: avoiding the potential 15-year mandatory minimum he could have been facing as an Armed Career Criminal." Gov't Sentencing Mem. 3. When the district court sentenced Petitioner, it was also with the understanding that the 10-level upward variance from the guidelines range was an appropriate bargain for avoiding prosecution and a potential enhanced sentence under the ACCA. Presentence Report ¶ 4.

Petitioner now moves the Court to vacate or correct his sentence pursuant to 28 U.S.C. § 2255. He argues that, with the Supreme Court's invalidation of the ACCA's residual clause in *Johnson*, his sentence violates the Due Process Clause. Resp. to Mot. to Dismiss 2. Petitioner asserts that every aspect of his plea agreement is infected by the ACCA's residual clause. *Id.* at 11-12. Although he acknowledges that his sentence is distinct from the ACCA in name, he suggests that, as a practical matter, he was directly subject to and induced by the unconstitutional

provision—it was the *sine qua non* of the entire agreement. *Id.* at 13-15. In the alternative, Petitioner contends that, in approving the plea agreement and imposing the requested sentence, the district court relied on objectively erroneous information. *Id.* at 12; Pet. Supp. Br. 3-4. Specifically, the court's assumption that Petitioner would be subject to a mandatory 15-year minimum sentence was an error of constitutional magnitude and wrongfully formed the basis for his significantly above-guidelines sentence. Resp. to Mot. to Dismiss 13.[1]

The Government opposes Petitioner's motion and seeks its dismissal on two grounds. First, the Government contends that Petitioner's motion is time barred under 28 U.S.C. § 2255(f) because the right recognized in *Johnson* does not extend to the advisory guidelines. Gov't Mot. to Dismiss 1-2. The Court need not address this argument because this case involves the residual clause of the ACCA, not the guidelines.[2] Second, the Government argues that *Johnson* is irrelevant because Petitioner's sentence is not pursuant to the ACCA and that, in any event, he knowingly and voluntarily bargained away his right to benefit from *Johnson*. Gov't Supp. Br. 3. Petitioner cannot, after the fact, claim misinformation or seek a better deal when he assented with a clear understanding of the risks and benefits. *Id.* Notably, the Government does not contest Petitioner's assertion that, absent the residual clause, he would have been ineligible for the ACCA enhancement. Given this implicit concession, the Court assumes that none of Petitioner's prior convictions would qualify as violent felonies absent the residual clause.[3]

---

[1] Contrary to the Government's assertion Petitioner never attacks his plea agreement on the grounds that it was not taken knowingly, voluntarily, and intelligently. *See* Gov't Supp. Mem. 3.
[2] Even assuming that the Government made pervasive typographical errors in its briefs and actually intended to challenge the timeliness of Petitioner's motion based on the argument that the right recognized in *Johnson* does not extend to *plea agreements* reached under threat of an ACCA-enhanced sentence, this argument is without merit. Unlike other cases recently decided by this Court which involved guidelines sentences, *see, e.g.*, *United States v. Colasanti*, ___ F. Supp. 3d ___, 2017 WL 4273300 (D. Or. Sept. 26, 2017), there is no question that Petitioner, in challenging a sentence allegedly based on the residual clause of the ACCA, asserts the same right recognized by the Supreme Court in *Johnson*. The Court can find no controlling or persuasive precedent to suggest otherwise.
[3] The Court also agrees with Petitioner's substantive argument that his Oregon Burglary II conviction would no longer qualify as a violent felony without the residual clause. *See United States v. Cisneros*, 826 F.3d 1190, 1196

Page 3 – OPINION AND ORDER

**DISCUSSION**

Under 28 U.S.C. § 2255, a federal prisoner may move to have his sentence vacated or corrected if it was "imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). It is uncontroversial that a sentence imposed pursuant to the residual clause of the ACCA violates the Constitution and is subject to collateral attack under 28 U.S.C. § 2255. *Johnson*, 135 S. Ct. at 2557; *see also Welch v. United States*, 136 S. Ct. 1257, 1265 (2016) (making the new constitutional rule announced in *Johnson* retroactive to cases on collateral review). Although the present case does not concern a sentence expressly enhanced by the residual clause, it raises an equally important adjacent question of constitutional law. At issue in the present case is whether a sentence knowingly and voluntarily agreed to under threat of an unconstitutional ACCA-enhanced sentence, and imposed by the district court based on a legal assumption later revealed to be erroneous, violates the Due Process Clause and gives rise to a cognizable claim for relief under 28 U.S.C. § 2255. The Court concludes that it does.

As an initial matter, this case reflects an inherent tension between two distinct bodies of doctrinal and prudential principles. On the one hand, the Supreme Court has long accorded significant discretion to sentencing courts and reinforced that discretion by assiduously promoting the finality of their judgments. *See, e.g.*, *Custis v. United States*, 511 U.S. 485, 497 (1994) (describing finality as essential to "the orderly administration of justice"); *United States v. Addonizio*, 442 U.S. 178, 184 n.11 (1979) ("Inroads on the concept of finality tend to undermine confidence in the integrity of [judicial] procedures."). This is especially true in the context of plea bargains. *See United States v. Timmreck*, 441 U.S. 780, 784 (1979) (observing that, when a guilty plea is at issue, "the concern with finality served by the limitation on collateral attack has

---

(9th Cir. 2016). In turn, the Court need not address the merits of Petitioner's argument with respect to his other predicate convictions for Oregon Robbery II since, without the Burglary II conviction, Petitioner would lack the three predicate offenses required to qualify as an Armed Career Criminal.

special force"). On the other hand, due process demands a floor of constitutional protections in sentencing and it is "the very purpose of . . . habeas corpus to safeguard a person's freedom from detention in violation of constitutional guarantees." *Blackledge v. Allison*, 431 U.S. 63, 72 (1977). Although the first set of principles serve important ends, they do not and cannot overcome constitutional deficiencies in a prisoner's sentence.

In the present case, Petitioner's sentence violates the Due Process Clause and must be corrected. A district court "generally has wide discretion in determining what sentence to impose." *United States v. Tucker*, 404 U.S. 443, 446 (1972). As part of that determination, the court "may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information [it] may consider, or the source from which it may consider." *United States v. Grayson*, 438 U.S. 41, 50 (1978); *see also* 18 U.S.C. § 3553(a), 3577 (codifying this principle). That discretion, however, is limited by the Fifth Amendment's guarantee of due process, "which protects a defendant from consideration of inaccurate or improper information." *United States v. Safirstein*, 827 F.2d 1380, 1385 (9th Cir. 1987). Under the Due Process Clause, a sentence may not be based on "misinformation of a constitutional magnitude." *Tucker*, 404 U.S. at 592. To that end, a sentence must be corrected if it was based on (1) "false or unreliable" information, and (2) such information "demonstrably made the basis for the sentence." *United States v. Vanderwerfhorst*, 576 F.3d 929, 935-36 (9th Cir. 2009).

A sentence based on an objectively false assumption, either factual or legal, is based on misinformation of a constitutional magnitude and must be corrected. In *United States v. Eakman*, for example, the Third Circuit vacated a prisoner's sentence after it was discovered that the trial court made an erroneous legal assumption. 378 F.3d 294 (3d Cir. 2004). The prisoner's sentence rested on the assumption that the Bureau of Prisons had the authority to place him in a

halfway house. *Id.* at 296. When this understanding of the law later proved inaccurate, the prisoner sought collateral relief and a transfer from the prison. *Id.* In finding that he was entitled to relief, the court held that a prisoner must be resentenced if he can demonstrate that "the district court made an error of law that [is ascertainable] from the record." *Id.* at 300. "It is hard to imagine," the court explained, "how a sentence could ever be deemed fair when there is some way to verify the sentencing court's error externally." *Id.*; *see also Townsend v. Burke*, 334 U.S. 736, 741 (1948) (finding a violation of due process where the trial court based its sentence on "assumptions concerning [petitioner's] criminal record which were materially untrue").

Similarly, a sentence enhancement triggered by predicate convictions which are later held unconstitutional is also based on misinformation of a constitutional magnitude. In *United States v. Tucker*, for example, the Supreme Court vacated a prisoner's sentence because it was enhanced by earlier convictions obtained without counsel. 404 U.S. 443 (1972). The prisoner was sentenced prior to the Court's decision in *Gideon v. Wainright*, 372 U.S. 335 (1963), which established a right to counsel for all felony prosecutions. *Id.* at 447. When *Gideon* was decided, the prisoner's predicate offenses were no longer valid and he applied for collateral relief. *Id.* In the holding that the prisoner was entitled to relief, the Court explained that speculating as to whether the prisoner would have been acquitted of the predicate offenses was "beside the point." *Id.* at 448. Instead, given the retroactive nature of *Gideon*, the proper inquiry was whether his present sentence "might have been different" had the trial court known that the two prior convictions were obtained by unconstitutional means. *Id.* The fact that the convictions appeared constitutional to the lower court at the time of sentencing, it concluded, was irrelevant.

It is only where the subjective expectations of a sentencing court are frustrated that the Due Process Clause affords prisoners no relief. In *United States v. Addonizio*, for example, the

Supreme Court refused to intervene following a Parole Commission's post-conviction change in policy. 442 U.S. 178 (1979). The prisoner's sentence was premised on the belief that he would be paroled after serving one third of the sentence. *Id.* at 181 n.3. When the Commission changed its policy on parole hearings, the prisoner was forced to remain in custody and sought collateral relief. *Id.* Although the Supreme Court denied the prisoner's petition, it carefully distinguished its holding from that in *Tucker*. "[I]n our judgment," it wrote, "there is no basis for enlarging the grounds for collateral attack to include claims based not on any objectively ascertainable error but on the frustration of the subjective intent of the sentencing judge." *Id.* at 187. Since the district court had harbored only a subjective belief about how the Commission would behave, and not an objectively incorrect legal understanding of the circumstances supporting its sentence, relief was unavailable. *Id.*

Although the present case is novel in that it deals with an assumption about the constitutionality of a statutory enhancement which itself was only later revealed to be erroneous, it raises the same due process concerns as the cases described above. A growing body of lower court precedent supports this view, *see e.g.*, *United States v. Terrell*, 217 F. Supp. 3d 1277, 1285-87 (E.D. Wash. 2016), and the Ninth Circuit has applied its two-part due process test to at least one plea agreement reached under threat of an ACCA enhancement, *see United States v. Molesky*, 691 Fed. Appx. 847, 848 (9th Cir. 2017) (unpublished). In particular, the district court in the present case, like that in *Eakman*, made an erroneous legal assumption about the applicability of the ACCA enhancement when it sentenced Petitioner. This error, unlike that in *Addonizio*, was not the result of a subjective belief about an outside entity's future actions, but rather an externally verifiable mistake of law, clearly reflected in the Plea Agreement, Presentence Report, and Sentencing Memo. Without this error, the district court would never

have approved the terms of Petitioner's plea agreement. The fact that the assumption appeared correct at the time of sentencing, as *Tucker* makes clear, is of no consequence given the constitutional nature of the infirmity and *Johnson*'s retroactive applicability.

Even if the district court did not rely on misinformation of a constitutional magnitude, Petitioner's sentence would still violate the Due Process Clause under a direct application of *Johnson*. The Supreme Court's invalidation of the residual clause in *Johnson* was premised on the principle that taking "life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement," violates the Constitution's guarantee of due process. 135 S. Ct. at 2556. It was fundamentally unfair, the Court explained, to expose defendants to an above-maximum sentence enhancement when it was virtually impossible to predict the type of conduct subject to that enhancement. *Id.* "The residual clause," it opined, "produces more unpredictability and arbitrariness than the Due Process Clause tolerates." *Id.* at 2558. The Court concluded that the ACCA's residual clause is "vague in all its applications" and that "increasing a defendant's sentence under the clause denies due process of law." *Id.* at 2557.

Petitioner's sentence falls squarely within the scope of *Johnson*. To hold otherwise—finding that his sentence was distinct from the ACCA, did not involve an application of the residual clause, and was not increased thereby—would be disingenuous. As other lower courts in the Ninth Circuit have concluded, the threatened ACCA enhancement increased Petitioner's sentence and "permeated the entire process" leading to its adoption. *Pressley v. United States*, 201 F. Supp. 3d 1277, 1282 (W.D. Wash. 2016); *see also United States v. Suttle*, No. 2:14-cr-00083-SBL, 2016 WL 3448598, at *4 (E.D. Wash. June 20, 2016). Although Petitioner is not serving an above-maximum term like the prisoner in *Johnson*, this is a distinction in search of a

relevant difference. Petitioner suffered from the same lack of fair notice regarding his potential qualification for the ACCA's mandatory 15-year minimum and the Government, in retrospect, had no right to threaten an unconstitutional sentence as a means of obtaining a sentence three-times that of Petitioner's advisory guideline range. The transactional nature of plea agreements notwithstanding, Petitioner was equally entitled to be free from the type of uncertainty in sentencing which was so forcefully rejected by the Supreme Court in *Johnson*.

## CONCLUSION

For the foregoing reasons, Petitioner's motion to vacate or correct his sentence under 28 U.S.C. § 2255 is GRANTED and the Government's motion to dismiss is DENIED.

IT IS SO ORDERED.

DATED this 27th day of November, 2017.

/s/ Michael McShane
Michael J. McShane
United States District Judge